V. De La Cruz-Garcia увá ayúdanos Good morning, your honors. May it please the courts. Councilor Johnny Rivera on behalf of the Avalanche Pedro de la Cruz Garcia. I would like to reserve two minutes for rebuttal, your honor. All right. The instant case involves the illegal smuggling of aliens, specifically 26 aliens. Unfortunately, at the end of the alien venture, when they were detected by the law enforcement authorities, one of the aliens unfortunately drowned. In this case, we come forward to the court humbly and request that the sentence be revoked. Although we admire Judge Fuste, we believe that in this case the court failed, the judge failed to make a particularized finding in this case. We know this is an issue of first impression for this court. But we believe that the guidelines are very specific and we believe specifically under the guideline 1B1.3 that the court was required to make a causation finding. Although section 2L1.1B7D does not provide a causation element for the court to find, we still believe that the purposes of sentencing, which involve honesty in sentencing and fairness in sentence, the court was required to make this particular finding. Although if we review the PSI and we follow the case law, finding that the court adopted the findings made in the PSI, we see that in the PSI the probation officer found that the defendant wasn't negligent and wasn't the immediate cause of the drowning. In this case, the appellant will concede that this was an illegal venture, that the conditions of the sea were rough, that probably the boat or the jowl wasn't seaworthy. However, in this case, we don't have a hot pursuit and it was impossible for my client or unreasonable to consider that the appellant could have foreseen that the alien would have jumped to the water and drowned under the difficult seawaters in this case. One of the points that we believe that the court was required to make a causation finding is because if we look at the legislative history of the Legal Immigration Reform Act and Immigration and Responsibility Act of 1996, we will find that one of the reasons why Section 2L1.1B7 was amended was in part because the law intended to apply when there was a smuggling venture where there was either a murder or was cause of death. In this case, we believe that that section combines with Section 1B1.3 requires for the court to make a causation finding. In this case, there is no such causation finding and the court literally imposed the 10-level enhancement for the murder. And we do believe that to be fair in this case, when the alien decided on her own volition to jump from the boat, she broke the chain of events. And as a consequence, the base offense limit should not have been adjusted, the 10 levels provided by this section. Excuse me, I understand you're arguing that the death was not reasonably foreseeable. That's correct, Your Honor. Are you also arguing that the judge did not utter the right words to express a conclusion that he thought the death was reasonably foreseeable? No, I believe the judge didn't make that particular specific finding, Your Honor. Well, what about the judge's statement when he said the venture was totally something that when you engage in it, you know, many things can go wrong. You can sink. You can be caught. All odds are against you, if you will. You don't think that was enough. Why not? I don't believe it was enough, Your Honor. One of the things is we cannot deny that the defendant was involved in an illegal venture, a dangerous venture. We cannot deny that, Your Honor. But in this case, if we look at other cases from other circuits, we can see that in this case you don't have the elements of attempted to flee, attempted to evade the authorities. In this case, the person who jumped from the boat was an adult, and that adult had substantial certainty was responsible for her actions. When she jumped from the boat, she broke the chain of events of causation in this case. And that's why we believe the court should have made that particular finding, Your Honor. It is a very sad event, Your Honor, but still, it would be unfair to automatically assign those 10 points. For example, if we would compare this case to the case in which one of the smugglers takes a gun and forced the passenger to jump from the boat, in that case, certainly the 10 points will apply. But in this case, applying those 10 points would be unfair, Your Honor. Suppose a whale hit the boat and sunk it and everybody drowned. Well, then, Your Honor, the defendant would have been responsible, the smugglers in this case, for that direct action because they caused that particular specific offense, Your Honor. That would have been reasonable, especially if you don't have a good boat. Because if you had a strong boat and a whale hits you, nothing is going to happen. And so you're saying that the fact that a whole bunch of people jumped overboard, not just this one person, right? You're saying that if you're trying to import people illegally and get them in the country and a helicopter comes overhead and spotted, that it's not at all foreseeable that some of the people you're trying to smuggle in might jump in and swim for it? Your Honor, in this case, those are the details. The helicopter was hovering over the boat when it arrived to the beach. And 12 aliens, 13 aliens, actually jumped from the boat. And one of them drowned, Your Honor. However, Your Honor, in this case, it's a part two issue. It's a two-branches issue. The first one is whether the court did make the finding. In this case, it's whether it is sufficient, foreseeable for the defendant, that that alien would have jumped from the same boat. And we have a ranger. But, counsel, more than half of the aliens on the boat jumped? I would say that about 12, 13 individuals did go to the water because the thing is, the Mona Island is not a common beach. It is very difficult to disembark on the Mona Beach. And even if you're a couple of feet from the sand, if there's a really rough sea, like it happened here, that the rough seas were too strong for this lady to be able to... So are you saying that it was unforeseeable that more than half of the people would jump under those circumstances because it was rough seas? No, no, no. But I mean, it's not unforeseeable. I mean, we have an island, a small island. We have aliens disembarking in the island. What I'm saying is that in this case, it was unforeseeable, Your Honor, that when they landed in the beach, the alien would have voluntarily jumped in this case. The time is up. Thank you, Your Honor. Mr. Matthews, good morning. Good morning, Your Honor. John Matthews appearing on behalf of the United States. May it please the Court. Your Honor, this is an unfortunate case where a Haitian immigrant died due to the defendant's smuggling venture from Dominican Republic to Puerto Rico. Ms. Benjamin jumped out. She did jump out of the boat, but the fact is the boat was unseaworthy and was crowded, and these were very dangerous conditions. She didn't die because of unseaworthiness or because of crowdedness. She died because she jumped overboard. She died because she jumped over, but she jumped over in a very – It wasn't that the boat was sinking. The boat wasn't sinking. That's correct, Your Honor. It wasn't because it was overcrowded. That's in part correct, Your Honor. In other words, I want to know what caused her death. What caused her death was her jumping out of the boat into very dangerous sea conditions. No, not necessarily. So the sea conditions were so dangerous that when the Coast Guard agent tried to rescue her, he couldn't even get to her. Now, granted, it's unclear whether she was already dead at that point. But how did – I still don't understand how the captain of the vessel, whoever was charged here, caused it. He didn't tell her to jump? He didn't force her to jump? That's correct, Your Honor. The government's position is that the district court did make a finding that rather than this being an approximate cause question that – Why not? Well, Your Honor, in these – I'm sorry to keep interrupting you, but I keep going back to the language here. It says murders or otherwise causes. It doesn't say approximate cause. It doesn't say but for a cause. It says causes. So I would think that would include all of the causes. Well, Your Honor, the district court highlighted the relevant guideline section, USSG section 2L1.1, which says if death results. So in this case, death did result from the smuggling venture. All right. Let me give you a couple of examples. Help me with it. They're traveling from the Dominican Republic, a closeted monoposite in an open boat, and the woman catches a cold because of the fact that she's getting wet and dies. Does that fall within this? Your Honor, the government's position would be if she did get wet and died because of the nature of the venture. So say they're traveling at night, the sea is cold, and the sea is rough, so the water is splashing onto the boat. The government's position is that actually would qualify because, inherent in the nature of smuggling in an overcrowded boat in these conditions, that the defendants must accept responsibility for anything that happens, whether that's serious bodily injury or death. Now it's unfortunate. I won't say whether I agree with you or not. I'll just give you another example for you to help me with. They arrive to Mona Island Beach. They actually beach the boat. She starts to get off the boat. She trips, falls, and breaks her neck and dies. Does that fall within this also? Yes, Your Honor, that would also fall within this because the but-for standard is not a difficult standard to meet when it comes to these operations. So we think, for example, in the 11th Circuit case Saldivar, the court said to apply Section 201.1B7, it must be reasonably foreseeable to a defendant that his actions or the actions of any other member of the smuggling operation could create the sort of dangerous circumstances that would be likely to result in serious injury or death. So going back to the fact that – That's not but-for. That's reasonable foreseeability. Our position is that the reasonable foreseeable test is closer to the but-for than what our brother counsel was arguing, which is that, you know, like you said, the fact that she jumped out of the boat resets everything, and that was the immediate cause. Our position is that the district court doesn't need that. It's just given the nature of the smuggling operation, it's a reasonable foreseeable that any number of these things could happen. And so, again, it's unfortunate. We're not saying that, you know, the defendant intended for this to happen. We think it's very unfortunate, and we think that the district court did factor that into a sentence. So the guideline range was 41 to 51 months. In this case, he gave 38 months in part because of the circumstances and the fact that they didn't find that this was an intentional or negligent event, you know, the fact that she did jump out of the boat. But it's reasonable foreseeable if you have this type of operation, danger sees that if there's an intervention, that people are going to try to flee and that any number of things could happen. So it's just – it's inherently dangerous. So we urge the court to affirm. If the court has no further questions, we'll rest on the brief. Thank you. Thank you, Your Honor. Very briefly, Your Honor, this case has two issues why the case should be vacated. The first one, as I previously mentioned, is that the court didn't make a particular finding. We understand that the law does require this finding to be made, and it's not a matter of whether the defendant commanded the alien to jump. The second issue would be whether it was foreseeable or not that this alien would have jumped from the vessel and would have drowned. In this case, we understand that the defendant is not wholly responsible. The chain of events were broken when this person jumped from the boat. This person was an adult, and she with substantial certainty knew the risk involved when she jumped from the boat. And with that, I will rest, Your Honor. Thank you.